IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SNAPMEDTECH, INC.,
   Plaintiff,

v.

MORRIS SNF MANAGEMENT, LLC d/b/a REGENCY CARE OF MORRIS, and WW HEALTHCARE CONSULTANTS, LLC,
   Defendants.

Civil Action No.
1:22-cv-03607-SDG

**OPINION AND ORDER**

This matter is before the Court on Plaintiff SnapMedTech, Inc.'s (SnapNurse)[1] motion for default judgment [ECF 12], against Defendant Morris SNF Management, LLC (doing business as Regency Care of Morris) and Defendant WW Healthcare Consultants, LLC. For the following reasons, SnapNurse's motion is **GRANTED** as to liability and **DEFERRED** as to damages.

**I.  BACKGROUND**

This case arises out of a contract between the parties, pursuant to which SnapNurse provided staffing for Defendants' healthcare facilities, and under which SnapNurse alleges Defendants are in default. SnapNurse contracts with healthcare facilities throughout the country to provide nurses and other healthcare

---

[1] Plaintiff refers to itself as "SnapNurse" in its complaint and motion for default judgment. The Court will do the same in this Order for the sake of consistency.

professionals.[2] SnapNurse compensates its contract workers at rates agreed upon with the facility, and invoices the facility based on that agreed-upon rate.[3]

SnapNurse's allegations are as follows: WW—the managing entity of the Regency Care brand,[4] whose facilities are at issue in this case[5]—solicited SnapNurse's staffing services for WW's and Morris's healthcare facilities.[6] The parties accordingly entered into a staffing agreement (the Agreement), under which SnapNurse would provide nursing services to Defendants and Defendants would reimburse SnapNurse at certain rates.[7] Pursuant to the Agreement, SnapNurse retained qualified nursing personnel, arranged for them to work at Defendants' facilities, and paid their wages and expenses.[8] SnapNurse then invoiced Defendants for those wages at the rates set forth in the Agreement—$1,060,338.44 in total—but Defendants have failed to pay.[9]

---

2   ECF 1, at 3, ¶¶ 8–9.

3   *Id.* ¶ 9.

4   *Id.* at 4, ¶ 11.

5   *Id.* ¶ 12.

6   *Id.*

7   *Id.* at 3–4, ¶¶ 10, 13–14.

8   *Id.* at 4, ¶¶ 13–14.

9   *Id.* ¶ 15.

SnapNurse accordingly sued for breach of contract,[10] seeking damages, accrued interest, and attorneys' fees and costs.[11] SnapNurse has filed proof of service on Defendants' registered agents,[12] but Defendants have neither answered nor appeared in this case. Thus, on SnapNurse's motion, the Clerk entered default as to both Defendants under Fed. R. Civ. P. 55(a),[13] and SnapNurse has subsequently moved for default judgment on both liability and damages.[14]

## II.   LEGAL STANDARD

Federal Rule of Procedure 55 establishes a two-step process for a party to obtain a default judgment. First, the party seeking default must obtain a Clerk's entry of default pursuant to Rule 55(a) by providing evidence "by affidavit or otherwise" that the opposing party "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, after the Clerk has made an entry of default, the party seeking the judgment must file a motion under Rule 55(b)(1) or (2). *Id. See also Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1360 n.1 (N.D. Ga. 2011) ("First the clerk must enter a party's default . . . the party [seeking the default judgment] must then apply to the court for a default judgment.").

---

[10]   *Id.* at 6.

[11]   *Id.* at 6–7.

[12]   ECF 5.

[13]   March 3, 2023 D.E. (Clerk's Entry of Default as to both Defendants).

[14]   ECF 12.

A defaulted defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). A defaulted defendant, however, is not held to admit facts that are not well pleaded or that constitute conclusions of law. *Id.* "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Therefore, when considering a motion for default judgment, a court must investigate the legal sufficiency of the allegations and ensure the complaint states a plausible claim for relief. *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1304 (N.D. Ga. 2017). *See also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually . . . a motion for default judgment is like a reverse motion to dismiss for failure to state a claim."). Ultimately, entry of a default judgment is committed to the discretion of the district court. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985).

## III. DISCUSSION

### A. SnapNurse Is Entitled to Default Judgment as to Liability

As a preliminary matter, the Court has already determined that it has subject matter jurisdiction over the action, and thus proceeds on the merits.[15] And on the merits, SnapNurse has alleged sufficient facts to plausibly state a breach of contract claim and is entitled to entry of a default judgment as to liability. To prove breach of contract under Georgia law, a plaintiff must establish three elements: (1) that the contract was breached; (2) that the plaintiff suffered damages from the breach; and (3) that the plaintiff has the right to sue for the breach. *CoreVest Am. Fin. Lender LLC v. Stewart Title Guar. Co.*, 358 Ga. App. 596, 599 (2021). And here, SnapNurse's allegations—admitted as true by virtue of Defendants' default—establish the elements of SnapNurse's claim.

---

[15]   Jan. 22, 2023 D.E. (Remark resolving Order to Show Cause). SnapNurse further argues that this Court has personal jurisdiction over Defendants because, among other reasons, the Agreement included a forum selection clause that "contemplated future consequences would be resolved in Georgia." ECF 12, at 12; *see The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 16–17 (1972) (holding that "freely bargained for" contractual forum selection clauses are generally enforceable unless against public policy or so inconvenient as to deprive a party of its day in court). To the extent that there is an issue with the Court's personal jurisdiction, Defendants may contest it in a collateral proceeding. *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 854 (11th Cir. 2010) ("[A] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

First, SnapNurse alleges that the Agreement is an enforceable contract, and that Defendants breached it by failing to pay the amount of the invoiced services.[16] Second, SnapNurse alleges it suffered damages in the form of $1,060,338.44 of unpaid invoices.[17] Third, the Court reasonably infers from SnapNurse's allegations that it has the right to sue for Defendants' alleged breach. SnapNurse is accordingly entitled to default judgment as to Defendants' liability.

### B.     SnapNurse Is Not Entitled to Default Judgment on Damages

The Court, however, cannot grant default judgment on the issue of damages. When the Court enters a default judgment, an evidentiary hearing on damages is generally required "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *SED Int'l, Inc. v. Kage Sys.*, No. CIV.A. 109-cv-01609, 2009 WL 4641778, at *2 (N.D. Ga. Dec. 1, 2009). SnapNurse argues that it is entitled to mathematically calculable damages in the amount of $1,119,733.17, "based upon the liquidated damages resulting from nonpayment plus accrued interest, and attorney's fees incurred in connection with this action."[18] But after reviewing SnapNurse's declarations, the Court determines that two main issues foreclose granting default judgment on damages at this point.

---

[16]   ECF 1, at 6, ¶ 23.

[17]   *Id.* at 5, ¶ 18.

[18]   ECF 12, at 16.

First, SnapNurse did not submit a copy of the Agreement in support of its motion for default judgment. Second, even after relying on SnapNurse's declarations and allegations regarding accrued interest and attorneys' fees, the Court is unable to the reach the $1,119,733.17 figure that SnapNurse claims in damages.

These issues may be related: it is partly because SnapNurse has not provided a copy of the Agreement that the Court cannot verify SnapNurse's calculations. For example, SnapNurse requests accrued interest on the unpaid invoices. But while SnapNurse asserts that the interest rate is 3 percent per year in its brief,[19] its complaint alleges an interest rate of 1.5 percent per year.[20] In addition to the numerical contradiction, SnapNurse fails to explain whether the interest is compound or how it otherwise accrues, and does not specify whether different invoices have been outstanding for varying amounts of time (which would, of course, result in different interest calculations). No wonder, then, that the Court has been unable to verify SnapNurse's claim that it is entitled to $1,119,733.17 in damages.

Because the Court cannot determine SnapNurse's damages without more information, it will hold an evidentiary hearing concerning same. SnapNurse may at that time amend its request for fees and otherwise perfect the record.

---

19   *Id.* at 15.

20   ECF 1, at 5, ¶ 16.

**IV. CONCLUSION**

SnapNurse's motion for default judgment [ECF 12] is **GRANTED** as to liability, and **DEFERRED** as to damages. An evidentiary hearing on damages will be held on **Friday, April 26, 2024, at 10 am,** in Courtroom 1706, Richard B. Russell Federal Building, 75 Ted Turner Drive SW, Atlanta, Georgia.

SnapNurse is **DIRECTED** to serve a copy of this Order by certified mail or other verified delivery on Defendants within seven days, and file proof of service with this Court.

**SO ORDERED** this 29th day of March, 2024.

Steven D. Grimberg
United States District Judge